## SMITH *et al. v.* PITNER *et al.*

Under the act of December 26, 1845, when a widow, at the time she became covert by a second marriage, had children living by a former husband and was then entitled to property by inheritance, although it was real estate of which she had possession, the same never having been administered or divided so as to assign to her her separate share in severalty, her share when afterwards assigned through regular administration became the common property of herself and her children.    And while a marriage contract entered into with her second husband previous to the marriage held off his marital rights, it did not operate to clothe the children with a less or different estate in their shares under the statute, but they took the estate prescribed by the statute, irrespective of any provision to the contrary in the mar-

riage settlement. This results logically from the language and object of the statute as interpreted by this court in *Matthews* v. *Bridges*, 13 *Ga.* 325, and *Roby* v. *Boswell*, 23 *Ga.* 51.

February 1, 1892.

Estates. Married women. Heirs. Before Judge MADDOX. Floyd superior court. March adjourned term, 1891.

Reported in the decision.

C. N. FEATHERSTON, for plaintiffs in error.

C. ROWELL, *contra*.

SIMMONS, Justice.

The court below held that the case was controlled by the statute of 1845, entitled " an act to change and point out the mode of inheritance in certain cases therein mentioned." This statute provides that "whenever any *feme covert* having a child or children living, by a former husband, shall be entitled to property by inheritance, such property shall not belong to the husband of such *feme covert*, as heretofore, but shall be equally divided between all the children of such *feme covert* and said *feme covert*. Such property, so divided as aforesaid, the parts or shares so allotted to any child or children by a previous marriage shall be vested in such child or children, and the part or parts so allotted to such *feme covert* and to her children by her last husband shall vest in such husband in the same manner as said property would vest under existing laws." Cobb's Dig. 297.

The facts, as they appear from the record, are as follows: Nathaniel Smith died in May, 1856, intestate, leaving as his heirs-at-law his widow, Mary Smith, and his three children by her. In September, 1857, before there was any administration or division of his estate, the widow married one C. O. Force, having first entered into a marriage contract or settlement with him and with Thomas J. Word as trustee, in which it was stipulated that all of her property, described as consisting

mainly of her interest in the estate of her deceased husband (a part of which estate was the land sued for in this case) should vest in Word as her trustee for her use and benefit during the coverture, and upon her death go to her children, share and share alike, free from the trust; or, in the event she should outlive her intended husband, the trust should determine at his death and the title should revert to her in fee. Some time after her marriage with Force, to wit in February, 1859, an administrator was appointed and the property of the estate was partitioned in kind among the heirs, and in that partition the land in dispute became a part of her share in severalty. In 1863, she and her trustee, Word, sold and conveyed this latter property to A. G. Pitner, the conveyance purporting to be in fee. She bore no children by Force, and in November, 1887, died, leaving her three children by the first husband, surviving her. They thereupon brought the present suit against the defendants to recover the property so sold to Pitner, claiming title thereto as remaindermen under the marriage settlement. The defence set up in the court below was, that under the statute above quoted, the marriage settlement under which the plaintiffs claim never became operative, it being contended that under that statute the title to the widow's share in the first husband's estate upon her marriage to the second husband vested *eo instanti* in herself and the children in equal parts; and that the latter, having failed to sue within seven years after the right accrued to their parts in said share, are barred by prescription and by the statute of limitations.

The trial judge instructed the jury that, "it being admitted that the land sued for was originally a part of the share of the mother of the plaintiffs in the lands of which her first husband, Nathaniel Smith, died seized, and which share she was entitled to as his widow or a distributee of his estate, and that said lands had never

been divided and her share thereof set apart to her in severalty until after her marriage with her second husband, C. O. Force, therefore, by virtue of the act of 1845, entitled 'an act to change and point out the mode of inheritance in certain cases therein mentioned,' then of force, upon her marriage with said Force the title to three fourths of her said share vested at once and in fee in her children by said first husband, now the plaintiffs; and that such was the effect of said statute, notwithstanding the marriage settlement shown in the evidence made by her with her intended second husband Force, and her trustee Word, before said second marriage; which marriage settlement could have effect only as to one fourth of her said share." Continuing, the court charged, "that it being admitted further that the youngest of the plaintiffs had attained majority more than seven years before the beginning of this suit, and it being undisputed that A. G. Pitner and the defendants holding under him had been in the continuous adverse possession of the property in dispute since 1863, therefore the plaintiffs could in no event recover these three fourths of the property, nor in any event more than one undivided fourth thereof." The jury found for the plaintiffs an undivided fourth of the property in dispute, and the plaintiffs made a motion for a new trial. The motion was overruled, and they excepted.

It was insisted that the court erred in charging, as above, that the act of 1845 applied to the case and had the effect stated, notwithstanding the due execution and delivery of the marriage settlement prior to the second marriage, and notwithstanding the evidence showed the widow was in possession of the property at the time of the marriage settlement. It was argued that the effect of the statute, as thus applied and interpreted, would be to divest the mother of the plaintiffs of a legal right already vested in her, to wit, that of the free disposition of her property. In the construction of this statute we

are governed by the interpretation placed upon it in *Matthews* v. *Bridges,* 13 *Ga.* 325, and *Roby* v. *Boswell,* 23 *Ga.* 51, in which its application was not limited to cases where the inheritance was cast upon the widow during the coverture. In each of the cases cited, the widow's right had vested before the second marriage, but in the opinion of the court this made no difference, as at the time of the marriage her status was merely that of an heir whose share had not been reduced to possession. The rule of descent prescribed by the act was held to apply if at the time of the marriage, or afterwards during the coverture, the wife was entitled to property by inheritance, and if she then had a child or children of a former marriage. The act had no reference to the time the right accrued; the test was, whether at any time during the coverture her right to the property was merely one of inheritance. It was held that the statute, being remedial, must be liberally construed, so as to advance the remedy. The mischief to be remedied was the acquisition by the husband, to the exclusion of the children by a former marriage, of property to which the wife became entitled by inheritance, and to which, before the adoption of this law, his marital rights would have attached; and whether her right accrued before the marriage or after, the mischief was the same. So in either event the case was considered as within the spirit of the act, and equally within the remedy.

It is true that in the present case the widow was in possession of the property before the marriage was contracted, but she held it as a part of the husband's estate and as the common property of all the heirs; her marriage contract described the property upon which it was to take effect as "her interest in the estate of . . her deceased husband"; and not until after the marriage was it administered and divided so as to assign to her her separate share in severalty. How was she entitled to the property thus distributed and assigned to her?

How else than as heir of the husband? Such being her status at the time of her marriage with the second husband, the right of the children to share equally with her in her part of the property accrued immediately upon the marriage; and because of the failure to assert their right within the statutory period, it was barred before the institution of this suit. The statute did not, as was contended, deprive the widow of any vested rights, for it was in existence when the inheritance devolved upon her, and the right which then accrued was qualified by the provisions of the statute.

It was argued that the act was not intended to defeat an ante-nuptial settlement fairly made, and that in this case the settlement, instead of being violative of the policy of the act, was in furtherance of it, the disposition of the property which the woman herself made being wiser and more beneficial than that which the statute would have made for her. The fallacy in this argument consists in treating the act as intended for the benefit of the wife alone, when its object was to protect her children. And the law did not leave their protection to her, but made its own disposition of the property. While the contract held off the husband's marital rights, it could not hold off any right of the children, and did not operate to clothe them with a less or different estate from that prescribed by the statute. She could not by her contract prescribe a new channel or mode of inheritance from that which the law had already marked out. She could not, as she here undertook to do, create a life-estate in herself and thus hold off until her death rights which the law had declared should accrue to the children upon her marriage.

These conclusions, we think, result logically from the language and object of the statute as interpreted in the decisions above cited. The court below did not err in overruling the motion for a new trial.

*Judgment affirmed.*